The next case is A. Royal Flush v. Arias. Good morning, Your Honors, and may it please the Court. I am Tommy Noonan from Butler-Tibbetts and represent the appellant A. Royal Flush. I would like to request a one-minute time for rebuttal. For some quick background, A. Royal Flush formerly employed the appellee Mr. Arias. Mr. Arias at one point decided to leave A. Royal Flush and go to A. Royal Flush's biggest competitor, United Site Services, USS. I refer to A. Royal Flush often as ARF, hopefully for simplicity's sake. At the time, there were potentially two restrictive covenants at issue for Mr. Arias. The parties litigated the issue in the district court through a preliminary injunction, and the court found that one of the restrictive covenants covering one year would be applicable. In that same lawsuit, the parties entered into a stipulated judgment, which is the basis for the current appeal and the motion to enforce a stipulated judgment in the district court. Of note, there were three prongs to the stipulated judgment. There was a two-year restrictive covenant for USS, one year for other competitors, two years was for, again, the bigger competitor, USS, and it was negotiated, ARF negotiated that specifically. Quarterly affirmations that Mr. Arias was complying with the stipulated judgment and a nominal payment of $1,500 from Mr. Arias to settle the underlying case of breach of contract restrictive covenant. That stipulated judgment was so ordered and the parties moved on or thought they had. At the time, in the initial preliminary injunction, USS had testified that Mr. Arias would be working on the West Coast, which is outside of any restrictive covenant geography, and that was what we were expecting with the stipulated judgment. In the fall of 2019, and it's important, I guess, to note in this day and age that this is, again, before COVID pandemic hit in March, we'll just say March 2020. But in the fall of 2019, ARF learned that Mr. Arias had returned to Connecticut to work for USS, which would be in breach of the restrictive covenant in the stipulated judgment. And we sought, after reaching out for a cease and desist and receiving no satisfactory response, or at least not the compliance that we were expecting, we went to the court for a motion to enforce the judgment. The district court found that Mr. Arias was not in contempt of the restrictive covenant, particularly with respect to the working in the geographical area, citing an economic necessity, which is, I guess, the main predominant issue in this case, which we found to be clearly erroneous based on the information in Mr. Arias' declaration. The court had not held an evidentiary hearing, so it therefore relied upon the submission. But you never requested an evidentiary hearing. Am I right about that? I don't believe we specifically asked for it in any of the papers. I think, in many respects, we thought the situation, the simple fact that he was in breach of it was more than sufficient. His declaration confirmed that he was in breach of it, should the court have obviously wanted an evidentiary hearing that was of the... Hard to criticize the court for not doing what you didn't ask for, is it? I think, Your Honor, in the case that... The answer is yes. Thank you. Considering where the court found the economic necessity, and I laid out in my brief that the three, I think, prongs, factual prongs that Judge Bolden relied upon necessitate an evidentiary hearing. Mr. Arias said that the executive board had changed from USS, he was assigned to Connecticut, and that he did not feel he was in a position to buck those orders. If the court was going to go down the route of an economic necessity and to truly examine whether an economic necessity was present to affect the willfulness that would be needed for contempt, those three factors, in my humble opinion, do not rise to the level of economic necessity. And in fact, as I write in my brief, potentially sets some tough precedent for the enforceability of restrictive covenants going forward. Did you seek to enjoin him from working? I don't believe we've... We did not set a separate action for a preliminary injunction. Because this stipulated judgment was so ordered by the court, specifically by Judge Bolden, we went back to the court who would have... Well, it would be enforcement of the agreement. They had within it a restrictive covenant, didn't it, for employment? I think it's inherently... I think it gets over the reasonableness prong quickly, but you didn't ask for that relief, did you? Well, we sought contempt. We sought to enforce the agreement, Your Honor, which included the restrictive covenant that I don't believe Judge Bolden addressed in his decision. Admittedly, again, considering the timing of when things were briefed and the pandemic hitting, you know, just how things essentially shook out, the timing hurts ARF in a bit, a lot. But that is nothing that we can really address how that played out. But we did ask for the enforcement of the settlement agreement. We sought contempt as well. So I think both Judge Bolden had the opportunity to enforce the stipulated judgment that he so ordered. And I think there's plenty of law that I won't get into about the reasonableness of the two-year restrictive covenants. I believe Judge Bolden made himself in his memorandum and addressed that himself. So Judge Bolden levied a fine and found a willful failure to file the required reports and just didn't go further than that. And that's part of what you're claiming error in. But why shouldn't we just read that as his rejection of those additional claims? I mean, he did, you know, take the whole matter kind of under advisement and, you know, gave you a decision. Yeah. I mean, that's not outside the realm of reasonable possibilities in this case. I think in order to find, as you did, though, in looking at the his decision to find the economic necessity. What we're asking this court to do is to review that for clear error. And based on what I my reading of Judge Bolden's decision in conduct in connection with really the only evidence that he can rely upon. Again, those three factual prongs is insufficient to make what I would think is a logical leap to an economic necessity argument. Just that he got the decision. He got the assignment and decided, well, I want to go back to Connecticut and I want to buck my orders. There's no finding and no knowledge that I know that USS knew about the restrictive agreement or that he made any effort. Hey, you know, USS, I got this restrictive covenant. And there are other places you can send me. Let me ask also, with respect to your claim for fees, attorney's fees and costs and so on. Did you make a submission, a specific submission to the district court for a particular amount that was associated with bringing the action? I did not, Your Honor. And this could be an error on my end. But my experience has been when Connecticut state and federal is asked for the attorney's fees, if they are granted a reasonable hearing is found thereafter. I don't normally send essentially an affidavit of my fees for the judge to do a reasonableness determination until I get an award of attorney's fees. And so that's just my experience. Again, it could obviously be wrong in its own right. Your Honor, just I mean, ARF had made the bargain for this. I mean, the big thing is the two year restrictive covenants. You know, the fine obviously is nominal in its own right and was fine. And the affirmations were important to make sure that Mr. Arias was complying with the two year restrictive covenant with respect to USS. It was a bargain that all the parties entered into ARF, especially in order to resolve the underlying case. And finding that, you know, we were unable to enforce this agreement, not just the restrictive covenant, but a court ordered stipulated agreement that included a restrictive covenant. I believe ARF was entitled to the benefit that it brought, at the very least, to enforce the stipulated judgment and that he should not be working in contract, in violation of the restrictive covenant. But the economic necessity decision or finding that Judge Bolden had made is clearly and clearly erroneous in that it doesn't have the proper factual underpinnings for that. And without any bit not hearing any other questions, I'll reserve for rebuttal. Thank you, Mr. Noonan. Thank you. We'll hear from Mr. Verner. Good morning, Your Honors. May it please the court. You know, the weighty issues I've heard argued today before this august court makes me feel as though a sparrow in the rafters of a great barn with this case. I think that the crux of the issue is whether or not the appellant got exactly what it asked for. The simple matter is that this record's pretty clear that the district court made no error. And the reason it didn't make any error is because the appellant got exactly what it asked for. It got an award of contempt or finding of contempt and award of sanctions. While its memorandum of law mentioned in one sentence the words attorney's fees and costs, there was never a formal request for a hearing on same. Moreover, what the appellant glosses over is the fact that Judge Bolden is quite familiar with these parties. A year before he had heard the preliminary injunction hearing, three days of testimony, he knew the parties, the witnesses intimately. He had judged their credibility and he knew essentially what their heartbeats were. And I think if one reads between the lines, he knew what the intent of the parties were. And the intent of the party, who is the appellant here, is essentially to make as much trouble for a rather low-level managerial employee as they could. One of the reasons that occurred, which is in my brief, is that his uncle Moro took great umbrage when Mr. Arias left Royal Flush to work for USS, who is a bigger competitor. Now, while the appellant might argue that Judge Bolden misperceived or glossed over findings of fact or errors of law, it's pretty clear that the remedy or the more appropriate remedy for such errors would have been a motion for reconsideration. Royal Flush flushed that remedy down the proverbial toilet by failing to file such a motion. So it asks you to look at the record anew without having attempted that remedy. Let me interrupt for just a minute, if I may, to ask one question. There was one aspect of the district court's opinion that puzzled me, when he said that there's an insufficient basis for finding Mr. Arias' violations willful to warrant the imposition of attorney's fees. There are a couple of other places where the court seems to imply an understanding that a willfulness finding is necessary to support an award of attorney's fees and costs in this circumstance. But the cases I've looked at that were cited suggest that willfulness is an important consideration, but it's not a necessary prerequisite. Do you think the district court might have erred in its understanding of the law here? No, I think that the particularly given the familiarity of Judge Bolden with the witnesses and the parties, I think that reviewing his notes from the hearings here before had, he understood that whatever Mr. Arias did was as a result of the economic necessity of having to move forward from a royal flush and taking the directions of what is essentially a monolith in the port-a-potty business USS. Mr. Arias has no bargaining power. If he went back to Connecticut, Judge Bolden knew why he went back to Connecticut. And it was clear on Mr. Arias' declaration in opposition that he was instructed to so move. Did he fail? Still, the stipulated judgment had the force of a court order. And he came back to Connecticut working in the same field. Understood. And Judge Bolden issued that order. So was it not Judge Bolden's decision to determine whether his order had been so willfully or flagrantly violated that a hearing on attorney's fees was required? Judge Bolden made the decision his order was not so violated. And having the benefit of the evidence that he had adduced during the prior hearings, he understood completely that USS directed Mr. Arias to return back to Connecticut. And Arias had no decision-making power in that regard. And that was the evidence of the case that was put before him on the issue. Curiously, they didn't seek to enjoin him from working in Connecticut. And that's correct. I mean, they could have brought the injunction. That's the thing that kind of makes me wonder. We've seen a number of these restrictive covenants in the past. And so certainly if they wanted to, they could have asked to have him enjoined and have him not work in Connecticut. They would have had to show kind of the injury that they'd have to sustain for it. The reasonableness, I would think the reasonableness is baked into it. It was a judicial settlement, for Lord's sake. The T.R.O. would have been granted in a heartbeat. All Bolden would have had to have seen was that his order was violated. And that hearing failed. They failed to file that. And so it's clear that the position in this case or in this appeal is essentially almost frivolous. Because repeatedly they failed to take such action as an appellant should have or would have had they had more of an intent to actually litigate the T.R.O. issues that they're espousing here rather than simply run up the bill for Mr. Arias because they've taken great umbrage at his initial departure. So I believe the record's clear. The appeal should be denied and nothing should be disturbed that Judge Bolden determined in the lower court. Thank you. Thank you, Mr. Berner. We'll hear rebuttal. Thank you, Your Honors. Again, just to reiterate my earlier point about why not seeking to enjoin, it was A.R.F.'s purpose to enforce the settlement agreement was to enjoin. It was, while it was a separate, a different proceeding than Judge Wesley had yourself is suggesting, was an option enforcing the settlement agreements through Judge Bolden. You had an agreement that he wasn't going to work in Connecticut for a period of time. Then he comes back to Connecticut. You're not happy with the fact that they assessed, made an assessment of $1,500 that he pays. But you didn't ask to have him not work in Connecticut. You could have easily asked Judge Bolden and say, no, we don't want, we don't want, assess a penalty against him for disregarding it. But now don't let it work and join him. Well, I think that was the point. Excuse me, Your Honor, I didn't interrupt you. No, no, that's okay. You could have done that, couldn't you? Well, that's, I think that I'm talking, the route that A.R.F. did was a similar route. We were seeking to enforce the agreement, which restricted him or prohibited him from working. Did you ask for him to be enjoined? Not in those specific words, but the fact that we were asking. Well, let me rephrase it more broadly. Did you ask for any type of court order that would have prohibited him under penalty of perjury for actually working, walking into a USS office and working in Connecticut? No, Your Honor, we did not. I don't think that was specifically there. But I think the fact that we were seeking enforcement of the stipulated judgment under Rule 70 was sufficient to ask for those remedies. Oh, okay. All right. And I will address that in the rest of my case. Okay. Fair enough. Thank you both. And we will take the matter under advisement. Thank you. Thank you, Your Honor. Take care. And that is the last case to be argued on the calendar, so I will ask the clerk to adjourn court. Court stands adjourned.